[Cite as *State v. Allenback*, 2012-Ohio-751.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,          CASE NO. 7-11-17

    v.

ERIC L. ALLENBACK AKA
ERIC L. ILDEFONSO,          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 09CR0060

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 27, 2012

APPEARANCES:

    *Alan J. Lehenbauer* for Appellant

    *John H. Hanna* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Eric L. Allenback aka Eric L. Ildefonso ("Allenback"), appeals the September 12, 2011 judgment of the Henry County Court of Common Pleas convicting him on one count of felonious assault and sentencing him to the maximum prison term of eight years.

{¶2} On September 15, 2009, the Henry County Grand Jury returned a five-count indictment alleging Allenback committed the following offenses. Count One: aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; Count Two: kidnapping, in violation of R.C. 2905.01(A)(2), (C)(1), a felony of the first degree; Count Three: kidnapping, in violation of R.C. 2905.01(A)(2), (C)(1), a felony of the second degree; Count Four: kidnapping, in violation of R.C. 2905.01(A)(2), (C)(1), a felony of the second degree; Count Five: felonious assault, in violation of 2903.11(A)(1), a felony of the second degree. All five counts were charged with additional firearm specifications.

{¶3} The charges stemmed from an incident on August 11, 2009, in which Allenback and a friend, John Kline, went to the home of Kline's estranged ex-girlfriend, Holli Balazs. The victim, Jason Westfall, answered the door at Balazs' home. Upon Westfall opening the door, Allenback tasered Westfall a number of times. Allenback and Kline then began to severely beat Westfall as he waivered in and out of consciousness. The record indicates that every time Westfall came to,

Allenback and Kline would continue to beat him by kicking and punching him in the head and the side. Allenback and Kline then forced Westfall into a vehicle. Balazs and Balazs' two-year-old child were also placed in the vehicle. Allenback continued to beat Westfall, which included punching him and wrapping the seat belt around his neck. Allenback also completely severed a portion of Westfall's ear from his head with a knife during the beating. Allenback and Kline released Balazs and her child to a safe place, but drove Westfall to Toledo and dropped him off in the street, where EMS eventually found Westfall and transported him to the hospital.

**{¶4}** On November 3, 2009, Allenback appeared for arraignment where the issue of his competency to stand trial was raised. On November 5, 2011, the trial court ordered Allenback to be referred to the Court Diagnostic and Treatment Center for a competency evaluation.

**{¶5}** On December 19, 2009, the trial court held a competency hearing. The report of the Court Diagnostic and Treatment Center was admitted into evidence. This report concluded that Allenback was incompetent to stand trial, but had a substantial probability of being restored to competency within one year. The trial court ordered Allenback to be held as an in-patient at the Northwest Ohio Psychiatric Hospital in Toledo for treatment and re-evaluation of competency.

{¶6} On June 24, 2010, the trial court revisited the issue of Allenback's competency to stand trial. At this hearing, a second report of the Court Diagnostic and Treatment Center was admitted into evidence. This report concluded that Allenback was now competent to stand trial.

{¶7} On June 30, 2010, Allenback entered a plea of not guilty by reason of insanity ("NGRI") to the five counts listed in the indictment.

{¶8} On November 16, 2010, Allenback filed a motion for psychological evaluation, requesting an independent psychological evaluation relating to his NGRI pleas. The trial court subsequently granted Allenback's motion for psychological evaluation.

{¶9} On March 22, 2011, Allenback withdrew his NGRI pleas and entered a plea of not guilty to the charges.

{¶10} On July 22, 2011, the trial court held a hearing. The prosecution moved to dismiss the firearm specification attached to Count Five of the indictment, which was granted by the trial court. The prosecution also notified the trial court of a plea arrangement with Allenback. The prosecution would be dismissing Counts One through Four in exchange for Allenback entering a plea of no contest to Count Five, as amended, charging second degree felonious assault with no firearm specification. The prosecution stated on the record that it would be recommending the maximum sentence of eight years in prison, but that this was

not a joint sentence recommendation. The trial court subsequently conducted a Crim.R. 11 plea colloquy with Allenback on the record, correctly noting that Allenback would be subject to a mandatory period of three years of postrelease control. Allenback then withdrew his former plea of not guilty and pleaded no contest to Count Five.

{¶11} On September 6, 2011, Allenback appeared for sentencing. The trial court heard arguments from both sides regarding the aggravating and mitigating circumstances relevant to Allenback's sentencing. The trial court then sentenced Allenback to the maximum sentence of eight years in prison. However, the trial court incorrectly stated both on the record and its September 12, 2011 Judgment Entry journalizing the conviction and sentence that Allenback is subject to a mandatory *five* year period of postrelease control.

{¶12} Allenback now appeals, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO THE MAXIMUM TERM OF IMPRISONMENT.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN IMPOSING A FIVE YEAR TERM OF POST RELEASE CONTROL FOR A FELONY OF THE SECOND DEGREE.**

*First Assignment of Error*

**{¶13}** In his first assignment of error, Allenback argues that the trial court erred in sentencing him to the maximum prison term of eight years for his conviction for a second degree felonious assault offense. In particular, Allenback maintains that there are mitigating facts and circumstances in the record which warranted the trial court imposing a lesser prison term.

**{¶14}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh*, 3d Dist. No. 16–07–07, 2007–Ohio–5774, ¶ 8, citing *State v. Carter*, 11th Dist. No. 2003–P–0007, 2004–Ohio—1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh*, citing *Carter* at ¶ 44; R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus; *State v. Boshko,*

139 Ohio App.3d 827, 835 (12th Dist.2000).[1]

{¶15} Additionally, "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶16} Here, Allenback argues that his criminal conduct, including past convictions, are episodic and occurred only in correlation with his history of chronic mental illness. Allenback claims the record demonstrates that he is less likely to commit future criminal offenses and pose a threat to the public when he is being properly treated for his psychological condition. Allenback maintains that while awaiting the resolution of this case, he has been medicated and demonstrated an ability to successfully manage his mental illness.

{¶17} On the record at the sentencing hearing, the trial court heard arguments in mitigation from Allenback's counsel as well as statements from Allenback expressing accountability for his criminal conduct and asking for leniency in sentencing. Prior to making its decision, the trial court noted that it

---

[1] We note that the Supreme Court of Ohio's plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, established a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). Although this Court utilized our precedential clear and convincing standard, affirmed and adopted by Kalish's three dissenting Justices, we would have concluded that Allenback's sentence was proper under the Kalish plurality's two-step approach as well.

also reviewed the pre-sentencing investigation report, a letter from Allenback's mother and a letter from Allenback's co-defendant, which stated that Allenback was only involved in the assault on the victim at his co-defendant's request.

{¶18} Moreover, the record also demonstrates that the victim in this case, Jason Westfall, has been unable to work since Allenback's assault on him. As a result of the injuries he sustained at the hands of Allenback, Westfall's eyes are still unable to focus and his left eye can no longer hold a line of sight. The record also demonstrates that Allenback did not know the victim prior to the attack.

{¶19} The trial court was in the best position to assess the credibility of statements made in mitigation on Allenback's behalf. The trial court stated on the record that it considered the factors set forth in R.C. 2929.11 and 2929.12 in reaching its ultimate determination to sentence Allenback to the maximum, eight years in prison. Given all of the information before the trial court, we do not find that the trial court erred in sentencing Allenback to the maximum sentence of eight years in prison. Allenback's first assignment of error is overruled.

<em>Second Assignment of Error</em>

{¶20} In his second assignment of error, Allenback argues that the trial court erred when it imposed a mandatory five year period of postrelease control as part of his sentence. Allenback was convicted of second degree felonious assault. Section 2967.28(B)(2) of the Revised Code states that an offender convicted of a

second degree felony that is not a felony sex offense shall be subject to a period of three years of postrelease control. We note that the trial court properly advised Allenback of postrelease control at the change of plea hearing. However, on the record at the sentencing hearing and in its judgment entry of conviction and sentence, the trial court incorrectly imposed a five year period of postrelease control. Accordingly, pursuant *State v. Fischer*, 128 Ohio St.3d 92, 2010–Ohio–6238, Allenback is entitled to be resentenced, but only for the limited purpose of properly imposing the mandatory three years of postrelease control. Allenback's second assignment of error is sustained.

{¶21} For the foregoing reasons, the judgment is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**